STATE OF VERMONT
ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| ANR v. Montagne & Branon | } | Docket No. 291-12-07 Vtec |
| (Assurance of Discontinuance) | } | |
| | } | |

## Decision and Order

This matter began as an investigation by the Vermont Agency of Natural Resources ("ANR") of an alleged illegal discharge[1] of liquefied manure into Lake Champlain by the Respondents, Eugene Branon and David Montagne, d/b/a B & M Dairy ("Respondents"). The Respondents' farm property is located in the adjoining towns of St. Albans and Swanton.

Prior to the filing of this action with the Court, ANR and Respondents negotiated and then signed an Assurance of Discontinuance ("AOD") pursuant to 10 V.S.A. § 8007 to settle the claims of illegal discharge through civil fines and site remediation. The AOD was completed on December 13, 2007, filed with the Court on December 28, 2007 and incorporated into this Court's Order of December 31, 2007. Thus, this matter was closed within one business day of being filed with the Court, which has been the practice followed by the Court concerning AOD settlements.

Respondents' neighbors, Michael and Melissa Ewell ("Ewells"), and the Conservation Law Foundation ("CLF") assert that the AOD and the subsequent Court Order were issued in derogation of the public-participation rights set forth by the Clean Water Act, its implementing regulations, and state law.

ANR is represented in this proceeding by Gary S. Kessler, Esq.; Respondents are represented by Peter J.R. Martin, Esq.; CLF is represented by Anthony L. Iarrapino, Esq.; and the Ewells appear pro se.

CLF and the Ewells have moved to intervene and vacate the Court approved AOD. ANR opposed their motion. At the March 19, 2008 hearing on the pending motion, the Respondents joined ANR in opposing the Ewells' and CLF's requests.

---

[1] ANR began its investigation after receiving notice from the Respondents' neighbors, the Ewells, who became concerned when they witnessed the liquid manure flowing onto their land and into Lake Champlain. It appears undisputed that the discharge into Lake Champlain was unintentional, although intent is not a necessary element of proof in such cases. The discharge occurred when the liquid manure was applied to the Respondents' fields in April, 2007. The fields had not been plowed under the previous fall and were hardened from the winter, causing some of the liquid manure to flow into the drainage ditch that discharged directly into Lake Champlain.

Solely for the purpose of reviewing the pending motion, we understand the following material facts to be undisputed:

**Factual Background**

1.      In 2005, Respondents purchased the "Old Reed Farm" ("Farm") located in the adjoining towns of St. Albans and Swanton.

2.      On April 25, 2007, the Respondents had three fertilizer spreaders applying liquid manure to the Farm's fields. The spreaders applied approximately 4,000 gallons of liquid manure per acre; a total of approximately 112,000 gallons of liquid manure was spread on the Respondents' fields.

3.      At the time of the liquid manure application, the fields were hard-packed, having not been plowed under the previous fall, nor harrowed that spring. The relative imperviousness, slope and quantity of liquid manure resulted in manure from the field running off into one or more drainage ditches. A drainage ditch runs under Maquam Shore Road and empties into Lake Champlain. Some of the liquid manure followed this path, ultimately discharging into Lake Champlain.

4.      By allowing liquid manure to discharge into Lake Champlain without a permit, Respondents violated 10 V.S.A. § 1259(a).[2]

5.      Upon being notified of the discharge, Respondents harrowed the fields and placed hay and lime in the ditch in order to mitigate the discharge.

6.      The Ewells live on Maquam Shore Road in St. Albans on a property that abuts Respondents' Farm. Their property and the drainage ditch on it were partially inundated by the liquid manure Respondents applied to their Farm fields. The liquid manure that ultimately deposited into Lake Champlain migrated through the ditches and culverts on the Ewells' property.

7.      The Ewells reported the discharge to Vermont State officials. The Ewells assert that residual dried manure and manure-laden sediment from the discharge remains on their property.

8.      ANR investigated the reported discharge and generated a report containing interviews and photographs. The matter was formally referred for prosecution on June 11, 2007.

9.      Over the next few months, several meetings took place between ANR and Respondents in an effort to resolve the violation. The Ewells were not invited or allowed to participate in these

---

[2] 10 V.S.A. § 1259(a) directs that "[n]o person shall discharge any waste, substance or material into waters of the state . . . without first obtaining a permit for that discharge from the secretary."

discussions. On October 4, 2007, ANR and Respondents met in a final effort to resolve the violation before an enforcement action was initiated. At the conclusion of this meeting, ANR and the Respondents agreed to the terms of a settlement, which was formalized in the AOD that was later filed with this Court.[3]

10. Two days before the AOD was signed, on December 11, 2007, the Secretary of ANR received a letter from CLF and the Ewells dated December 6, 2007. The letter was entitled:

> Notification of Intervention Pursuant to 40 C.F.R. § 123.27(d) in Ongoing Administrative Enforcement Proceeding against David and Kathy Montagne and/or Gene and Desiree Branon for violation of the Clean Water Act Section 301(a).

This same letter was copied to the Environmental Court. The letter cites the federal Clean Water Act ("CWA") and asserts a right to intervene in any ANR environmental enforcement proceedings or settlement discussions, pursuant to federal rules and regulations implemented under the CWA.

11. By letter dated December 11, 2007, ANR responded to CLF's December 6th letter. In that response letter, ANR informed CLF that it had a different interpretation of the CWA provisions regarding public participation. The import of the ANR response was that neither CLF nor the Ewells were welcomed and would not be allowed by ANR to intervene in the environmental enforcement settlement discussions with the Respondents

12. In a letter dated December 13, 2007, CLF forwarded their "Notice of Intervention" letter to the Environmental Court. In that letter, CLF requested the opportunity to be heard in any proceedings on the matter that may be filed with the Court. The Court staff informed CLF that there was no matter pending between ANR and Respondents at that time and that it did not have a mechanism in place to retrieve CLF's request if and when the applicable ANR filing was made with the Court.

13. On December 13, 2007, Respondents signed the AOD, which was received by the Court on December 28, 2007. On the next business day—December 31, 2007—the Court issued an Order approving the AOD.

14. On January 2, 2008, CLF again contacted Court staff and was informed that the AOD had been filed and approved by the Court. Upon being made aware of CLF's concerns, the Court

---

[3] The AOD required Respondents to pay a $2,000 penalty; contribute $8,500 for Supplemental Environment Projects in order to re-contour the field according to an approved work-plan; underwrite a study on acceptable agricultural practices; agree to state inspections and access; complete a nutrient management plan; create a twenty-five foot buffer on the west end of the fields that drain towards Lake Champlain; and conduct on-site training.

3

scheduled a hearing to address CLF's and the Ewells' request that the matter be reopened and that they be allowed to intervene.

15. On January 4, 2008, the Court scheduled a hearing to determine if there was a basis to re-open this matter and whether CLF and the Ewells should be permitted to intervene in the re-opened proceeding. ANR, CLF and the Ewells were then offered an opportunity to file legal memoranda related to the pending requests.

16. On March 19, 2008, with all potential and actual parties present, the Court heard arguments at the Franklin Superior Court on CLF and the Ewells' motion to vacate the AOD and subsequent Court Order, and that they then be allowed to intervene in the re-opened proceedings.

### Discussion

This matter exposes the fairly obscure interplay between federal and state law, and the manner in which ANR prosecutes environmental violations. Specifically, the issue presented for determination is whether regulations from the Clean Water Act ("CWA") regarding public participation and notice necessarily apply to Vermont state law, which implements these regulations as the delegated permitting and enforcement authority under the CWA. Assuming that federal regulations do apply to the State, the resulting issue is whether the State's administration satisfies the federal protocol for allowance of participation. A precursor to that main issue is whether this Court has jurisdictional authority in this proceeding to adjudicate the propriety of ANR's procedures for processing compliance with federal water protection laws.

To begin, we look to the federal law. The Clean Water Act was enacted in 1972 "to restore and maintain the chemical, physical and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The Act allows states to establish programs in conformance with federal guidelines and provides that states may issue National Pollution Discharge Elimination System ("NPDES") permits under federal law concerning the discharge of pollutants into state and federal waters, subject to conditions, "provide[d the state has] adequate authority to carry out the described program." 33 U.S.C. § 1342(b); 40 C.F.R. § 123.1(f) ("Any state program approved by the Administrator shall at all times be conducted in accordance with the requirements of this part [of the federal regulations].") Thus, violators of the state-authorized NPDES permit program are subject to both state and federal enforcement actions relating to the alleged violations. 33 U.S.C. § 1319; § 1342(b)(7).

4

The United States Environmental Protection Agency ("EPA") delegated to ANR the authority to enforce and implement the CWA and its NPDES permitting program through an equivalent set of state laws. Vermont's NPDES permitting program generally satisfies the delegation requirement through implementation of 10 V.S.A. § 1259(a) which directs that "[n]o person shall discharge any waste, substance or material into waters of the state . . . without first obtaining a permit for that discharge from the secretary." Here, the underlying enforcement action and subsequent AOD between ANR and Respondents arose under 10 V.S.A. § 1259(a), based upon the uncontested fact that Respondents discharged liquid manure into Lake Champlain without authority under a federal or state permit. CLF asserts that Respondents' fertilizing activities also violated the federal CWA. Neither Respondents nor ANR specifically disputed this assertion, although ANR has chosen not to prosecute Respondents under the CWA and now asserts that the signed AOD precludes ANR from bringing additional CWA claims against Respondents.

In addition to numerous other requirements imposed on states which have been delegated NPDES permitting and enforcement authority, the CWA regulations mandate public participation. 40 C.F.R. § 123.27(d) directs that:

> (d) Any State administering a program shall provide for public participation in the State enforcement process by providing either:
>
> > (1) Authority which allows intervention as of right in any civil or administrative action to obtain remedies specified in paragraphs (a)(1), (2) or (3) of this section by any citizen having an interest which is or may be adversely affected; or
> >
> > (2) Assurance that the State agency or enforcement authority will:
> >
> > > (i) Investigate and provide written responses to all citizen complaints submitted pursuant to the procedures specified in § 123.26(b)(4);
> > >
> > > (ii) Not oppose intervention by any citizen when permissive intervention may be authorized by statute, rule, or regulation; and
> > >
> > > (iii) Publish notice of and provide at least 30 days for public comment on any proposed settlement of a State enforcement action.

40 C.F.R. § 123.27(d).

Although the State of Vermont is required to comply with all requirements for NPDES permit programs, including 40 C.F.R. § 123.27(d), this Court has been unable to uncover the specific Vermont regulations which implement this public participation provision for an environmental infraction that results in an assurance of discontinuance. Rule 4 of the Vermont

Rules of Environmental Court Proceedings ("V.R.E.C.P.") sets forth the standards our Court applies when reviewing environmental enforcement proceedings. Rule 4(b) describes assurances of discontinuance as "a pleading by agreement pursuant to Rule 8(g) of the Vermont Rules of Civil Procedure" that, if signed by the Court, becomes a judicial order which may only be vacated on motion of the Attorney General, filed within ten days of the order. The Rule goes on to provide that the Attorney General's motion to vacate may only be based upon grounds that the specific assurance of discontinuance is insufficient to carry out the purposes of enforcement.

Rule 4(b) does not provide for public participation, notice or an opportunity to intervene, either "as of right" or "by permission." Similarly, 10 V.S.A. § 8007 describes assurances of discontinuance "[a]s an alternative to administrative or judicial proceedings" and then lays out the requisite substance and procedures to be included in the agreement. Section 8007(d) specifically precludes ANR—and for these purposes EPA—from holding Respondents liable for additional civil or criminal penalties if the respondents comply with the AOD. We therefore conclude that § 8007 also does not provide for public participation, notice or an opportunity to intervene, either "as of right" or "by permission."

At the hearing held on March 19, 2008, CLF asserted and no other party disputed that AODs accounted for more than 77%[4] of all formal environmental enforcement proceedings undertaken by ANR in recent years.

Notwithstanding this empirical data, ANR contends that the public participation requirements apply only when ANR files an Administrative Order ("AO"), and not when the enforcement action is settled through an AOD. Thus, ANR asserts by implication that its procedures comply with 40 C.F.R. § 123.27(d) because there is authority for persons to intervene as of right and participate in environmental enforcement proceedings[5] that are initiated by the filing of AOs.

Rule 4(d) of the V.R.E.C.P. describes the procedures for review of administrative orders. Rule 4(d)(3) of the V.R.E.C.P. provides for intervention under Rule 24 of the Vermont Rules of Civil Procedure ("V.R.C.P.") by setting forth that "the court may grant party status to an aggrieved person as provided in 10 V.S.A. § 8012(d)." Looking to § 8012(d), we find that "the

---

[4] The estimated percentage of environmental enforcement proceedings filed with this Court as AoDs was gleaned from ANR's legislative reports for its activities between 1995–2005, per statistics compiled in the CLF report entitled *Lost Opportunities, Surveying the Weak Enforcement of Vermont's Environmental Laws*.

[5] We use the term "environmental enforcement proceedings" here to include those that are begun by the filing of AOs and AoDs.

6

environmental court may grant party status to an aggrieved person for the purpose of providing evidence and legal arguments only in relation to the sufficiency of an order issued under . . . section 8008."

As we previously stated, § 8008 covers only AOs, and not AODs. Notwithstanding this impediment, "aggrieved person" is defined in § 8012(d) as "a person who demonstrates that the interest of that person is not adequately represented by any other party and who at the time of the alleged violation had" an ownership interest in real property directly affected by the violation or a distinct interest in the proceeding because of the person's place of residence. The barrier to intervention in settlement proceedings is not clearly explained.

Here, the Ewells satisfy the test for an aggrieved person because they own property that was directly affected by the discharge of liquid manure off the Respondents' Farm. CLF has presented an offer of proof concerning its members' use of Lake Champlain that appears to meet the threshold showing for "aggrieved persons." Yet, because the ANR settled this environmental violation through an assurance of discontinuance and did not file in this Court for prosecution of its administrative order, ANR asserts that neither the Ewells nor CLF have statutory authority to intervene under state law in any aspect of the initial prosecution or ultimate settlement proceedings against Respondents.

Because of the inability to intervene as of right or by permission, ANR appears to agree that the Ewells, and perhaps CLF, retain a right to prosecute a private cause of action. 10 V.S.A. § 8012(d). However, we do not fully appreciate the import of ANR's assertion here, since we cannot find authority for the proposition that a private cause of action lawfully substitutes for the state's obligation to establish procedures for notice and intervention of interested parties under 40 C.F.R. § 123.27(d).

ANR's literal reading of the CWA regulations and implementation of state law has been asserted in a sister jurisdiction and has been found to be abhorrent. The U.S. Court of Appeals for the D.C. Circuit concluded that:

> Congress contemplated that these regulations [at 40 C.F.R. § 123.27(d)] would do more than pay lip service to public participation; instead, the public must have a genuine opportunity to speak on the issue of protection of its waters on federal, state, and local levels.

Natural Res. Def. Council v. Envtl. Prot. Agency, 859 F.2d 156, 177 (D.C. Cir. 1988) (internal quotations and citations omitted).

It appears undisputable that ANR's narrow application of § 123.27(d) as applying only to AOs and not AODs defeats the intent behind the CWA, its regulations, and the EPA's delegation of administration and enforcement to ANR. However, ANR's narrow interpretation appears to be encouraged by enactments by our state Legislature, cited above, as well as the cited provisions from our own Rules of Procedure. In particular, the Legislature's authorization of ANR's use of AODs, without notice or intervention rights, as an alternative to judicial proceedings appears to ignore a clear mandate of the CWA. See 40 C.F.R § 123.27(d)(2) ("Any State administering a [CWA] program *shall* provide for public participation in the State enforcement process by providing . . . (iii) . . . at least 30 days for public comment on any proposed settlement of a State enforcement action.") (emphasis added).

Despite this apparent conflict between the specific directives of federal regulations and the Vermont laws, regulations and rules enacted to implement environmental protections, we must focus upon the more narrow issue that is actually before us: whether ANR violated a recognized right of CLF and the Ewells to receive notice and participate in an enforcement action settled through this AOD. Under current state law, ANR did not violate those rights because they used the alternative process of an AOD and not an administrative order. The AOD alternative is legislatively authorized by 10 V.S.A. § 8007.

CLF's claim, shared here by the Ewells, represents a challenge that does not focus solely upon the prosecution procedures ANR followed in this specific case, but a general challenge aimed at the various deficiencies in the procedures followed by ANR in its prosecution of most all water protection violations, whether under the federal CWA or state law. It appears that the appropriate forum for this general process challenge is either with the Legislature or a court that has the jurisdictional authority to determine the State's general compliance with federal CWA regulations. We regret that we do not enjoy the jurisdictional authority to act on such a mandamus request.

Our jurisdictional authority is limited to the adjudication of matters specifically conferred upon this Court. 4 V.S.A. § 1001(b). Given that under § 1001(b), this Court has authority to adjudicate environmental enforcement claims, such as those asserted by ANR in this case, we do not agree with ANR that this Court lacks authority to adjudicate environmental violations prosecuted under state law, including those prosecutions it maintains as the entity delegated by the federal EPA to prosecute violations under the federal CWA. However, we can discern no

8

foundation for our jurisdictional authority to entertain challenges to procedures established by or on behalf of ANR under the federal CWA in this specific state enforcement proceeding.

We further note that, because ANR used an AOD to adjudicate Respondents' admitted environmental violations in this case, § 8007(d) precludes ANR—and for these purposes EPA— from holding Respondents liable for additional civil or criminal penalties under federal law. This fact remains accurate even after one is reminded that ANR chose not to pursue separate allegations under the federal CWA. However, because the AOD prevents participation from aggrieved parties, private citizens or environmental groups are allowed to pursue private enforcement claims under the CWA. 33 U.S.C. § 1365.

Arguably, ANR could assert that private groups are precluded from bringing additional CWA claims under the citizen suit provision because the state agency has already "diligently" prosecuted the violation. 33 U.S.C. § 1319. However, the assertion that a state's prosecution has been "diligent" when it refused to provide notice or an opportunity to be heard to aggrieved persons has been rejected by a reviewing federal court:

> Importantly, the State's apparent failure to enact the public participation safeguards which are mandated by the implementing regulations of the Clean Water Act, *see* 40 C.F.R. 123.23(d), does not alter the federal standard of "diligent prosecution," which requires these safeguards to be provided and followed. In other words, although the State apparently need not, under its present law, provide for public participation in its enforcement process, its failure to allow for such public participation may impede its ability to bar citizen suits for the same violations.

Frilling v. Village of Anna, 924 F.Supp. 821, 842 (S.D. Ohio 1996).

The facts of the Frilling case bear some resemblance to the facts of the case now before us. The Frilling case centered on unlawful discharges of wastewater into Clay Creek in Anna, Ohio, home to a Honda of America Manufacturing, Inc. ("Honda") facility. Id. at 828. Honda was authorized to discharge sanitary and industrial wastewater into the Village public wastewater treatment facility, which in turn was authorized to discharge treated wastewater from its facility into Clay Creek, under the terms of a NPDES permit held by the Village. The Ohio Environmental Protection Agency ("OEPA") stood in the same position as our ANR, in that it had been delegated permitting and enforcement authority under the federal CWA.

OEPA advised the Village and Honda that they were in violation of their respective permits concerning discharges into Clay Creek. These violations were ultimately resolved through administrative settlement, in a process much like the assurance of discontinuance

9

process in Vermont. Aggrieved parties, such as Mr. Frilling and his neighbors, were rebuffed when they attempted to intervene in OEPA's prosecution and settlement of the environmental enforcement claims. Id. at 828-9.

The private agreement reached between OEPA, the Village and Honda was incorporated into a consent order, which was filed simultaneously with OEPA's environmental enforcement complaint. Similar to the court process followed in Vermont, the Ohio state court signed the consent order and closed the case within one business day of OEPA's initial filing. Throughout this process, aggrieved persons such as Mr. Frilling were denied notice or an opportunity to intervene in the OEPA proceedings. Id. at 829.

Mr. Frilling and his co-plaintiffs thereafter brought a citizens suit under the CWA against the Village and Honda. Such citizens suits are authorized under the CWA, provided that the federal or state authorities haven't already "diligently prosecuted" the environmental violations the citizens suit seeks to remedy. Id. at 842; see also 33 U.S.C. § 1365(b)(1)(B).

While OEPA's state prosecution of the Village and Honda appears to have withstood Mr. Frilling's challenges, the U.S. District Court for the Southern District of Ohio concluded that OEPA's failure and refusal to afford Mr. Frilling and other aggrieved parties with notice and an opportunity for meaningful participation in its state environmental enforcement proceedings could not be a basis for barring the private citizens suit. Id. at 842. In short, the Court concluded that OEPA's prosecution of the Village and Honda could not be regarded as "diligent." Id.

We are not aware, given the similarities between these two cases, of how ANR's prosecution of the Respondents here could be classified as "diligent" under the CWA. A private citizen's suit may be the consequence of ANR's decision to deny CLF and the Ewells with notice and an opportunity to participate in ANR's state environmental enforcement proceedings. However, we are equally unaware of the precedent that would allow us to re-open these state environmental enforcement proceedings and direct ANR to allow these aggrieved persons to participate.

For all these reasons, the pending motion by the Conservation Law Foundation, Michael Ewell and Melissa Ewell is hereby **DENIED**. The consent Order of December 31, 2007 remains undisturbed.

This completes the current proceedings before this Court in this matter.

10

Dated at Newfane, Vermont this 9th day of April, 2008.

_____
Thomas S. Durkin, Environmental Judge